Robert J. ECKHOLT, Plaintiff,

v.

AMERICAN BUSINESS INFORMATION, INC., et al., Defendants.

Civ. A. No. 93–2440–KHV.

United States District Court,
D. Kansas.

Dec. 15, 1994.

John M. Edgar, Steven E. Mauer, Matthew V. Bartle, Robert J. Hoffman, and Bryan Cave, Kansas City, MO, for Robert J. Eckholt.

Heather Suzanne Woodson, Mark D. Hinderks, Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, and Elliot S. Kaplan, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for American Business Information, Inc. and American Business Communications, Inc.

Robert J. Hoffman and Bryan Cave, Kansas City, MO, for Business Communications and Information, Inc.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on *Defendants' Motion for Partial Summary Judgment* (Doc. # 100). Plaintiff Robert J. Eckholt sued defendants American Business Information, Inc. ("ABI") and its subsidiary, American Business Communications, Inc. ("ABCI"), alleging various breaches of agreements, false promises and other claims. All such claims arose from an asset purchase agreement between Eckholt's company, Business Communications and Information, Inc. ("BCI"), as seller, and ABCI, as buyer. ABCI counterclaimed, alleging that Eckholt and BCI made fraudulent and negligent misrepresentations and also committed fraud through silence in connection with ABCI's acquisition of BCI's assets. In this motion, ABI and ABCI claim they are entitled to summary judgment on various theories advanced by Eckholt and BCI. Specifically, ABI and ABCI ask the court to enter summary judgment on each of the following claims by Eckholt and BCI:

(1) fraudulent promise of future events;

(2) negligent promise of future events;

(3) tortious interference with Eckholt's employment contract;

(4) breach of fiduciary duty with regard to the escrow agreement between the parties;

(5) conversion; and

(6) claims for attorneys' fees and expenses arising out of this litigation.

■■■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Having examined the record in light of the relevant law, the Court finds that the motion should be sustained with respect to plaintiffs' claims for negligent promise and attorneys' fees, and overruled in all other respects.

### I. Background [1]

In 1993, BCI conducted business as Seminars International. BCI's business was to

1. The following facts are either uncontroverted

or, where controverted, construed in the light

provide seminars to the public and to corporate clients. Eckholt was the President, Chief Executive Officer and largest shareholder of BCI. Katherine Eshnaur and Steve Marshall were founders and owners of the predecessor company of Seminars International. After BCI acquired Seminars International, it continued to employ Eshnaur and Marshall.

ABI is a publicly traded company that markets business lists to businesses that provide products and services to other businesses. Jon Hoffmaster, during the relevant time period, was the President and Chief Operating Officer of ABI. ABCI was incorporated to purchase the assets of BCI. Since the purchase, ABCI has continued to operate the seminars business as Seminars International. At all relevant times, ABI owned and continues to own 80% of ABCI's stock.

### A. The Transaction

In 1992 or 1993, Hoffmaster and Vinod Gupta, the chief executive officer of ABI, began negotiating with Eckholt regarding a potential purchase of BCI. In May, 1993, the parties executed a letter of intent, and the transaction closed on June 11, 1993. ABCI, the acquiring company, was formed as a subsidiary of ABI shortly before the sale. As part of the overall transaction, BCI agreed to sell ABCI certain assets, not including the accounts receivable, in exchange for $3,000,000, plus certain ABI stock and ABCI stock. In addition, ABCI agreed to employ Eckholt, Eshnaur and Marshall. It also agreed to act as escrow agent to collect BCI's accounts receivable, pay BCI's accounts payable, and disburse any cash remaining as of December 20, 1993.

### B. The Asset Purchase Agreement

The primary document which evidences ABCI's purchase of BCI assets is the Asset Purchase Agreement (the "Agreement"). The Agreement was signed June 11, 1993, but it was effective June 1, 1993. The parties to the Agreement were Eckholt; BCI;

Bill J. Reed, Klaus A. Dueck, Dennis L. Boesiger, Paul D. Garnett, Richard B. Lantefield and M.L. Steinmetz (the "Other BCI Shareholders"); ABCI; and, for the limited purpose of the Agreement's purchase consideration provision, ABI. The consideration for the purchase of BCI's assets was $3,000,000 cash, 30,000 shares of ABI common stock distributed directly to Eckholt and 20% of ABCI's common stock.

### C. The Eckholt Employment Agreement

On June 11, 1993, Eckholt and ABCI also entered into an Employment Agreement which provided that ABCI would employ Eckholt for three years as president of ABCI on the terms set forth therein.

The Employment Agreement provided that ABCI could terminate Eckholt's employment, for cause, in certain circumstances: (a) Eckholt's violation of any material provision of the Employment Agreement that continued for five days after Eckholt was notified of such violation; (b) Eckholt's conviction of a felony; and (c) Eckholt's commission of an act of fraud, malfeasance or gross negligence. Any termination for cause operated to terminate ABCI's obligations (including any obligation to pay salary) under the Employment Agreement.

The Employment Agreement contained an integration clause which stated:

> This Employment Agreement contains the entire understanding and agreement between [ABCI] and [Eckholt] and supersedes any prior agreements between them pertaining to [Eckholt's] employment with [ABCI]. There are no representations, warranties, promises, covenants or understandings between [ABCI] and [Eckholt] with respect to such employment other than those expressly set forth in this Employment Agreement and in the Noncompete Agreement.

Employment Agreement, § 8.

### D. The Employment Agreement Modification Letter

On June 11, 1993, when the parties met to close the transaction, Hoffmaster asked Eck-

most favorable to the nonmoving party. Immaterial facts and factual averments not properly

supported by the record are omitted.

holt to agree to a modification of the Employment Agreement by signing a supplemental letter (the "Modification Letter"). After discussions with counsel and negotiation of certain changes, Eckholt agreed. The Modification Letter was executed by Eckholt and Hoffmaster, who signed on behalf of ABCI.

The Modification Letter set forth specific performance standards for the company and provided that Eckholt's employment could be terminated if those standards were not met. It gave ABCI the option to terminate Eckholt if ABCI failed to "attain each year pretax, preamortization profits equal to 12% of the current year's gross revenues with 10% gross revenue growth over the previous year." It further provided that if ABCI terminated Eckholt pursuant to the Modification Letter, ABCI would give him 30 days' notice, pay three months' salary as severance pay and purchase his ABCI stock based on a price formula set forth in the Modification Letter.

ABI and ABCI contend that Hoffmaster, who was the president of both companies at the time of the sale, intended that ABCI would continue to employ Eckholt as long as the performance standards in the Modification Letter were met. ABI and ABCI also claim that they wanted Eckholt to participate in managing the new seminar company and that they were relying on Eckholt's professed expertise and experience to operate it since neither ABI nor any of its subsidiaries had ever been in the seminars business before.

Eckholt claims that at the time they entered into the Employment Agreement and Modification Letter, ABI and ABCI did not intend that ABCI would actually employ Eckholt as promised. In support of his claim, Eckholt cites circumstantial evidence that Hoffmaster (rather than Eckholt) was designated ABCI's president, when it was incorporated; that Hoffmaster retained the position of president even after ABCI entered into the Employment Agreement and Modification Letter with Eckholt; that the Modification Letter, with its mechanism for early termination, was first presented to Eckholt at the closing; that at the time of the sale, ABI had created a list of changes it planned to implement regarding BCI's management and accounting functions; that although ABI had assured Eckholt he would have managerial control over ABCI, ABI assumed many of ABCI's accounting and personnel functions; that neither ABI nor ABCI ever criticized Eckholt's management style until the time of termination; that ABCI terminated his employment only four months into the job; and that ABCI employed his successor at a substantially lower salary than it had agreed to pay Eckholt.

In addition, Eckholt denies that ABI and ABCI wanted him to participate in managing the new company or relied upon his expertise in the seminars business. Eckholt points out that ABI had conducted seminars before it acquired BCI and that, at the time of the acquisition, ABI and ABCI also hired Eshnaur and Marshall—two BCI employees who had more experience in seminars than Eckholt did.

### E. The Escrow Agreement

BCI and ABCI also entered into an Escrow Agreement on June 11, 1993. In general, the Escrow Agreement provided that BCI would deposit into an escrow account certain accounts receivable and prepaid expense accounts. ABCI agreed to act as escrow agent and attempt to collect the accounts receivable and pay BCI's trade payable accounts from the money collected. ABCI agreed to disburse to BCI on or before December 20, 1993, any money left in the fund on November 30, 1993. Although ABCI concedes that the escrow account had a positive balance on November 30, 1993, and still does today. ABCI has not, however, remitted the balance to BCI.

As part of the Escrow Agreement, BCI agreed not to make any claim or bring any action against ABCI in connection with ABCI's performance "in good faith and without willful misconduct or gross negligence" of its obligations under the Escrow Agreement.

### F. Eckholt's Termination

After the transaction was closed on June 11, 1993, ABCI continued operating the semi-

nars business of Seminars International. ABI and ABCI claim that Eckholt continued performing the same or similar duties that he had been performing before ABCI acquired BCI's assets. Eckholt claims that his authority was limited after the sale and that Hoffmaster assumed some of his decision-making functions.

Hoffmaster and Gupta, directors of ABCI, had questions concerning Eckholt's performance during the period before his termination, including questions about ABCI's declining profits compared to Eckholt's projections, which had been more optimistic. On October 1, 1994, Hoffmaster notified Eckholt that his employment was terminated effective that day, for failure to meet the performance standards required by the Modification Letter.

### G. The Lawsuit

On October 26, 1993, Eckholt filed this action against ABCI and ABI, alleging that ABCI had breached the Employment Agreement and Modification Letter, that ABI and ABCI operated as alter egos and that ABI tortiously interfered with the Employment Agreement. He also requested rescission of the Noncompete Agreement he had executed in connection with the Employment Agreement. Eckholt filed his First Amended Complaint on December 8, 1993, adding a statutory wage claim against ABCI and a claim against ABI for oppression of a minority shareholder.

ABCI counterclaimed against Eckholt, BCI and the Other BCI Shareholders, claiming that it had been induced to enter into the various agreements by fraudulent and negligent misrepresentations and fraudulent omissions on the part of Eckholt and BCI. In a final amended complaint, Eckholt added several claims against ABI and ABCI. BCI and the Other BCI Shareholders also made claims against ABI and ABCI.[2]

The six claims that are relevant to this motion are: (1) that ABI and ABCI fraudulently promised to employ Eckholt pursuant to the terms of the employment agreements with ABCI; (2) that ABI and ABCI negligently promised to employ Eckholt pursuant to the terms of those agreements; (3) that ABI tortiously interfered with Eckholt's employment agreements with ABCI; (4) that ABCI breached its fiduciary duty to BCI under the Escrow Agreement; (5) that ABCI is liable to BCI for conversion of the escrow account; and (6) that ABCI and ABI are obligated to pay attorneys' fees and expenses incurred as a result of their breach of the various agreements. ABI and ABCI claim that they are entitled to summary judgment on each of these claims.

### II. *Fraudulent Promise*

Eckholt alleges that at the time they entered into the Employment Agreement and Modification Letter, ABCI and ABI had no . intention of employing him pursuant to those agreements. He asserts that ABCI and ABI should therefore be held liable for fraudulently promising to do so.[3] ABCI and ABI claim that Eckholt cannot present sufficient evidence to convince a reasonable trier of fact that his claim is valid.

On a motion for summary judgment, the court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In Kansas, "[t]he burden of proving fraud is by a preponderance of the evidence, but that evidence must be clear, convincing, and satisfactory." *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 596 P.2d 816, 824 (1979). However, since fraud is a secretive act that must be concealed for success, *Chute v. Old American Ins. Co.*, 6 Kan.App.2d 412,

---

**2.** Subsequent to this motion, the Other BCI Shareholders voluntarily dismissed their claims against ABCI and ABI.

**3.** Although Eckholt styles his claim as one for fraudulent promise of future events, it is actually a claim for fraudulent misrepresentation. Eckholt alleges that ABCI did not intend to employ him pursuant to the terms of the Employment

Agreement at the time it entered into that Agreement with him. If Eckholt's allegation is true, then ABCI fraudulently misrepresented its then-existing intention, not an event that was to occur in the future. The Court discusses the claim and the motion for summary judgment on this claim accordingly.

629 P.2d 734, 742 (1981), Kansas recognizes the rule that fraud may be shown by circumstantial as well as direct proof. *Id.; K–B Trucking Co. v. Riss Int'l Corp.,* 763 F.2d 1148, 1157 (10th Cir.1985).

■ As ABCI and ABI point out, mere nonperformance of a promise is not enough to establish fraud. *Young v. Hecht,* 3 Kan. App.2d 510, 597 P.2d 682, 688 (1979). Rather, "[o]ther circumstances of a substantial character must exist which would support an inference of wrongful intent at the time of making the representation." *Id.* As set forth more fully above, Eckholt has presented evidence (1) that he was never fully endowed with the power to act as ABCI's president, although that was what the employment agreements contemplated; (2) that ABCI terminated his employment only four months into a three-year contract; (3) that ABCI and ABI devised a mechanism for early termination on the eve of the asset purchase closing; and (4) that his successor at ABCI is paid substantially less than he was to be paid under the employment agreements.

■ Under these circumstances, ABCI and ABI's knowledge and intent are questions of fact which must be decided by the jury. Giving plaintiff the benefit of all favorable inferences, as the Court is required to do on a motion for summary judgment, the Court cannot say as a matter of law that Eckholt's evidence is insufficient to prove fraud. While the evidence is arguably thin in some respects, the Court cannot hold as a matter of law that no reasonable jury might find in it clear and convincing evidence of fraud. Therefore, summary judgment on Eckholt's fraud claim is inappropriate.

### III. *Negligent Promise*

■ Eckholt claims that ABI and ABCI are liable for negligence because they knew or should have known that they were not going to perform the employment agreements pursuant to their terms. ABI and ABCI argue that Eckholt's claim fails as a matter of law because Kansas does not recognize such a cause of action.

The Court need not decide whether, under other circumstances, negligent promises are actionable under Kansas law. Eckholt has alleged no facts which support a claim of negligence, as it pertains to the employment agreements. Eckholt's claim is that defendants were negligent in representing their then-current intent to employ him pursuant to the terms of the employment agreements. The record contains no evidence of negligence, however, and it appears to the Court that defendants either intended to carry out their promises, or they did not. To recognize a claim for negligent promise, on this record, would be to endow every breach of contract with a potential tort claim for negligent promise. The Seventh Circuit recently noted as much in a similar situation:

> . . . if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation . . . not one based on negligence.

*Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 628 n. 7 (7th Cir.1993).

Accordingly, Eckholt's claim for negligent promise must fail, and defendants' motion for summary judgment on that claim must be sustained.

### IV. *Tortious Interference*

Eckholt alleges that ABI tortiously interfered with the employment agreement between Eckholt and ABCI. ABCI and ABI claim that ABI cannot be held liable for any interference because, as the 80% shareholder of ABCI, ABI was privileged to intervene in its subsidiary's business relations.

■ Kansas law recognizes that a party who, without legal justification to do so, induces or otherwise causes another not to perform a contract may be liable for the resulting damages. *V.C. Video, Inc. v. Nat'l Video, Inc.,* 755 F.Supp. 962, 970 (D.Kan. 1990); *Turner v. Halliburton Co.,* 240 Kan. 1, 722 P.2d 1106, 1115 (1986). However, not all interference with contractual relations is tortious; the inducement to breach a contract must be wrongful and not privileged in order for an action to lie for tortious interfer-

ence. *Brown Mackie College v. Graham*, 768 F.Supp. 1457, 1461 (D.Kan.1991).

Several factors are considered in determining whether an actor's conduct in intentionally interfering with a contract is improper: (a) the nature of the conduct; (b) the actor's motive; (c) the interests of the other with which the actor's conduct interferes; (d) the actor's interests; (e) the social interests in protecting the actor's freedom to act and the other's contractual interests; (f) the proximity of the actor's conduct to the interference; and (g) the relations among the parties affected. *Turner*, 722 P.2d at 1116–17 (citing Restatement (Second) of Torts § 767 (1977)). Whether the interference was improper should be determined by evaluating these and other relevant factors on a case-by-case basis:

> ... [t]he issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation.[4]

Restatement (Second) of Torts § 767, cmt. b. In this case, the parties have presented conflicting evidence on ABI's interest in the employment contract between ABCI and Eckholt, the nature and extent of ABI's conduct regarding that contract, the motives of ABI and of ABCI in terminating Eckholt and other factors which may be relevant to the inquiry whether ABI's interference, if any, was justified. ABI urges the Court to decide that Eckholt's claim against it for tortious interference with his employment contract with ABCI fails as a matter of law because ABI was privileged to interfere in its subsid-

iary's business relations. However, on this record the Court cannot do so. The factual determinations listed above remain unresolved, and the Court cannot sustain ABI's motion for summary judgment on this issue.

## V. *Breach of Fiduciary Duty*

BCI claims that ABCI, as escrow agent, breached certain fiduciary duties with respect to the parties' Escrow Agreement.

Defendants urge the Court to reject this claim, as a matter of law, because (1) the language of the Escrow Agreement did not specifically impose any fiduciary duty; and (2) the Escrow Agreement expressly provided that ABCI assumed only the duties specifically set forth in the Agreement.[5] ABCI argues that it therefore had no fiduciary duty to BCI and that it cannot be held liable for breach of any such duty.

The limiting clause of the Escrow Agreement provides that:

> The duties and obligations of [ABCI] shall be determined solely by the provisions of this Agreement, and [ABCI] shall not be liable to any person except for the performance of such duties and obligations as are specifically set forth in this Agreement.

Escrow Agreement, § 5(a). The Escrow Agreement also prohibits BCI from making any claim against ABCI

> ... arising out of, or in connection with, [ABCI's] acceptance or performance (including acts and omissions), in good faith and without willful misconduct or gross negligence, of its duties and obligations under this Agreement....

Escrow Agreement § 5(b)(1). ABCI and ABI argue that as matter of law, these provisions bar any claim for breach of fiduciary

---

**4.** Kansas courts are in disagreement as to whether, outside the summary judgment context, this issue is one for the Court or the jury to decide. The parties are invited to submit supplemental briefs and proposed jury instructions on this question before trial.

**5.** BCI claims that ABCI, as escrow agent, breached its fiduciary duties by (1) failing to use reasonable efforts to collect BCI's accounts receivable; (2) failing to use reasonable efforts to pay BCI's accounts payable; (3) failing to dis-

burse the escrow funds to BCI on or before December 20, 1993; and (4) failing to surrender to BCI all information regarding the uncollected accounts receivable and uncredited prepaid expenses, as required by the escrow agreement.

All such duties arose under the Escrow Agreement, and ABCI cannot reasonably claim that BCI's breach of fiduciary claim seeks to impose duties beyond those created by the Escrow Agreement, in violation of Section 5(a).

duty with respect to the escrow account. The Court must reject these arguments.

 First, a contract need not expressly impose fiduciary duties in order to have that effect. Fiduciary liability does not depend solely on an agreement or contract, but results from the relation between the parties. Restatement (Second) of Torts § 874 cmt. b. (1977). Under Kansas law, a fiduciary relationship may be created by a contract or implied from the surrounding facts and circumstances. *Daniels v. Army Nat'l Bank*, 249 Kan. 654, 822 P.2d 39, 42 (1991). A fiduciary relationship may exist "under a variety of circumstances, and does exist in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254, 267–68 (1976). Thus, whether a fiduciary relationship exists in a particular situation is a factual question for the jury. *Dugan v. First Nat'l Bank*, 227 Kan. 201, 606 P.2d 1009, 1015 (1980). Whether ABCI owed BCI a fiduciary duty, and whether ABCI breached that duty, remain questions of fact for the jury.

Second, the Escrow Agreement does not exonerate defendants from all liability for breach of the Escrow Agreement or any fiduciary duties which might arise in connection with that agreement. Section 5(b)(1) protects ABCI from liability only for those acts and omissions committed in the performance of its duties and obligations under the contract "in good faith and without willful misconduct or gross negligence." Whether ABCI acted with the requisite good faith and lack of willful misconduct and gross negligence is of course a question of fact which the Court cannot properly determine as a matter of law on this record.

Accordingly, ABI and ABCI's motion for summary judgment on BCI's breach of fiduciary duty claim must be denied.

---

**6.** See D.Kan. Rule 206(g), as follows:
If a respondent fails to file a response within the time required by this rule, the motion will

## VI. *Conversion*

BCI's conversion claim centers around the fact that ABCI has retained funds which BCI deposited in the escrow account and which the Escrow Agreement required ABCI to relinquish to BCI upon termination of the account. ABI and ABCI assert that BCI cannot maintain an action for conversion because BCI has not alleged acts that are "wrongful," as distinguished from acts that merely violate BCI's contractual rights. Because BCI has not done so, ABI and ABCI argue that BCI's only available action is one for breach of contract.

As discussed more fully in another order by this Court (Doc. # 212), dated November 23, 1994, ABI and ABCI misstate the law in Kansas as to maintaining a cause of action for conversion. Their motion for summary judgment on BCI's conversion claim must be overruled.

## VII. *Attorneys' Fees and Expenses*

Eckholt and BCI originally claimed that ABCI should be held liable for attorneys' fees which plaintiffs incurred as a result of ABCI's breaches of the Asset Purchase Agreement, the Employment Agreement and Modification Letter and the Escrow Agreement. On an alter ego theory, BCI and Eckholt argued that ABI is also liable for those attorneys' fees.

 In their *Memorandum in Support of Defendants' Motion for Partial Summary Judgment* (Doc. # 101), ABCI and ABI devote several pages to argument that as a matter of law, they are not liable for attorneys' fees. The Court need not address these arguments, however, because they are uncontested. See *Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment* (Doc. # 138). By not responding to defendants' motion on this issue, Eckholt and BCI have relinquished any claim for attorneys' fees and conceded that summary judgment should be entered against them.[6] Defendants' motion for summary judgment with respect to these claims must therefore be sustained.

---

be considered and decided as an uncontested motion, and ordinarily will be granted without further notice.

**IT IS THEREFORE ORDERED** that *Defendants' Motion for Partial Summary Judgment* (Doc. # 100) be and hereby is **SUSTAINED** with respect to Eckholt's claim for negligent promise and with respect to BCI and Eckholt's claims for attorneys' fees, and it should be **OVERRULED** in all other respects.