No. 73,863

DEBBIE GERHARDT, *Appellant*, v. KEVIN C. HARRIS, *Appellee*.
934 P.2d 976

Opinion filed March 14, 1997.

*R. Todd Wilhelmus*, of Mission, argued the cause and was on the briefs for appellant.

*James C. Trickey*, of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case concerns a dispute over an attorney fee. Our Rule 223 (1996 Kan. Ct. R. Annot. 242) concerning immunity arising from involvement in disciplinary proceedings is discussed and construed.

Plaintiff, Debbie Gerhardt, appealed the summary judgment dismissing her claims against her former attorney, defendant Kevin C. Harris. The district court granted Harris' motion in limine barring testimony of Stanton Hazlett, Chief Deputy Disciplinary Administrator, and denied Gerhardt's motion to amend her petition. Hazlett was to testify that Harris and Gerhardt agreed to resolve their fee dispute by submitting it to the Johnson County Bar As-

sociation Fee Dispute Committee (the committee) and to be bound by the decision. (Gerhardt filed a disciplinary complaint against Harris following termination of his representation. See *In re Harris*, 261 Kan. 1063, 934 P.2d 965 (1997). The district court, relying on Rule 223, barred Hazlett's testimony because it arose from a disciplinary matter. The Court of Appeals affirmed in an unpublished opinion filed on June 14, 1996. We granted Gerhardt's petition for review. Our jurisdiction is under K.S.A. 20-3018(b).

The issues for review are: Did the district court err in (1) granting Harris' motion in limine to bar the testimony of Hazlett under Rule 223; and (2) granting Harris' motion for summary judgment and dismissing Gerhardt's claims for fraud, negligent misrepresentation, breach of oral contract, fraud by silence, and tortious interference with prospective economic advantage?

Our review of the record and of the parties' contentions convinces us that summary judgment was not the proper procedural vehicle for resolving all but the negligent misrepresentation claim. See K.S.A. 60-256 and *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993) (rules relating to summary judgment reviewed).

We affirm the Court of Appeals and the district court on summary judgment against Gerhardt on her negligent misrepresentation claim. We reverse the Court of Appeals and the district court and remand the case to the district court on all other issues.

## FACTS

On July 8, 1991, Gerhardt retained Harris to represent her in a personal injury claim arising out of an automobile accident. Gerhardt and Harris signed a contingency fee contract which provided that Harris was to receive 40% of any recovery. In November 1991 and again in December 1991, Gerhardt wrote to Harris terminating his services.

Gerhardt attempted to receive payment for lost wages and medical expenses in late 1991 and early 1992 from American Family Insurance Company (American Family), the insurer on the personal injury claim. American Family refused to negotiate with her because Harris had filed an attorney's lien. After Harris informed

American Family he had been terminated, Gerhardt negotiated a settlement for the $25,000 policy limit.

Gerhardt wrote a letter to the Disciplinary Administrator complaining of Harris' conduct. Hazlett had several conversations with Harris as a result of the disciplinary complaint. At Hazlett's suggestion, Harris and Gerhardt agreed to submit their dispute to the committee. Harris wrote a confirming letter dated February 24, 1993, to Carrie Huffman of American Family. The February 24, 1993, letter said:

"Pursuant to our conversation regarding disposition of funds on Ms. Gerhardt's claim, I am sending you this letter which sets out my understanding of the process that has been agreed upon to disburse funds.

"Please make out your check to Debra Gerhardt and Kevin C. Harris. Mail that check to Ms. Gerhardt for her endorsement, upon receipt she is to mail it to me for my endorsement so that I may deposit it in my trust account. When the check clears I will mail Ms. Gephardt [sic] a check for the amount on your check less $4,000.00. That amount will remain in my trust account pending a decision as to my appropriate fee by the Johnson County Bar Fee Dispute Committee or waiver by Ms. Gerhardt.

"This is the agreement that was worked out by Stan Hazlett and, as noted below, I am mailing him a copy."

Harris agreed to release his lien if American Family issued a check in the amount of $4,000 made payable to both Gerhardt and Harris to be deposited in Harris' trust account, pending the committee's decision. Harris received the $4,000 check and deposited it in his trust account.

The committee divided the $4,000, awarding Gerhardt $3,094 and Harris $906.

Harris refused to abide by the committee's decision, contending that he never intended to be bound. Gerhardt, acting pro se, sued Harris for his failure to follow the committee's decision. Gerhardt later obtained counsel, who amended her petition to allege negligent misrepresentation, fraudulent misrepresentation, and breach of an oral agreement. Before trial, the district court denied Gerhardt's motion to amend to add claims for fraud by silence and tortious interference, and granted summary judgment for Harris on all claims. The district court also determined that Hazlett's tes-

timony was not admissible under Rule 223 because it arose from a disciplinary matter.

## DISCUSSION
### The Court of Appeals' Opinion

In an unpublished decision, the Court of Appeals determined that the district court: (1) did not err in its Rule 223 analysis excluding Hazlett's testimony; and (2) properly (a) granted summary judgment to defendant on the fraud and breach of contract claims because of a failure of proof (Hazlett's testimony being excluded); (b) granted summary judgment to defendant on the negligent misrepresentation claim; and (c) denied Gerhardt's motion to amend her petition. Harris' cross-appeal also was denied. (Harris had cross-appealed the denial of his motions to dismiss Gerhardt's appeal and for costs and sanctions.) The case was remanded for consideration of Gerhardt's motion for new trial.

### Rule 223 and the Motion in Limine

Harris, in his motion in limine, advanced Rule 223 and *Jarvis v. Drake*, 250 Kan. 645, 830 P.2d 23 (1992) (interpreting Rule 223), as grounds for excluding Hazlett's testimony. The district court and the Court of Appeals agreed. We reverse. Interpretation of Rule 223 is a question of law. Our review of questions of law is unlimited. *Calwell v. Hassan*, 260 Kan. 769, 778, 925 P.2d 422 (1996). Although abuse of discretion is the standard of review applicable to motions in limine, see *State v. Rowell*, 256 Kan. 200, Syl. ¶ 2, 883 P.2d 1184 (1994), when the district court's ruling hinges on an interpretation of our rule, we exercise an independent appellate determination. See *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995).

Hazlett first became involved after Gerhardt filed an April 8, 1992, complaint with the Disciplinary Administrator. According to Gerhardt, Harris was unwilling to communicate with her or release his attorney's lien on any settlement proceeds after she had terminated his representation in her personal injury claim. Hazlett's affidavit stated that in February 1993, he suggested to Harris, as a way to resolve the dispute between Harris and Gerhardt, that a

check from American Family for $4,000 be made payable to both Harris and Gerhardt. After Gerhardt's endorsement, the check would be deposited in Harris' trust account. The dispute over the $4,000 would be submitted to the committee, and the parties would follow the committee's decision. Gerhardt would receive a separate check from American Family for the balance of the settlement proceeds. Harris agreed to this procedure, as did Gerhardt. Hazlett's affidavit had attached Harris' February 24, 1993, letter to Huffman. Although the letter differed in some details from the procedure Hazlett described, it did include Harris' agreement to the deposit of $4,000 into Harris' trust account *"pending a decision as to my appropriate fee by the Johnson County Bar Fee Dispute Committee or waiver by Ms. Gerhardt."* (Emphasis added.) Harris sent the letter to Huffman because American Family insisted upon receiving something in writing from Harris setting forth his agreement to the settlement procedure before disbursing any funds.

In *Jarvis*, 250 Kan. 645, we affirmed dismissal of attorney Jarvis' action for malicious prosecution, libel, and tortious interference with a contract against Drake (the ex-husband of Jarvis' client), stemming from Drake's filing of a disciplinary complaint against Jarvis. The disciplinary complaint had been dismissed for lack of probable cause. The district court granted Drake's motion for summary judgment on the ground that Drake was immune from suit under Rule 223. We determined Rule 223 was not ambiguous, providing Drake absolute immunity. 250 Kan. at 651. We also found Rule 223 constitutional. 250 Kan. at 653.

Rule 223 provides:

"Complaints, reports, or testimony in the course of disciplinary proceedings under these Rules shall be deemed to be made in the course of judicial proceedings. All participants shall be entitled to judicial immunity and all rights, privileges and immunities afforded public officials and other participants in actions filed in the courts of this state."

When judicial immunity is applied to someone other than a judge, a "functional approach" to determining the scope of immunity should be used. See *Burns v. Reed*, 500 U.S. 478, 486, 114 L. Ed. 2d 547, 111 S. Ct. 1934 (1991) ("[T]he official seeking ab-

solute immunity bears the burden of showing that such immunity is justified for the function in question."). Gerhardt argues that Harris was not performing a function entitling him to any immunity when he agreed to the settlement procedure proposed by Hazlett, so Rule 223 should not apply. We agree.

Rule 223 affords "all participants" judicial immunity. The term "all participants" refers to "[c]omplaints, reports, or testimony in the course of disciplinary proceedings." Under the functional approach to determining the scope of judicial immunity, Rule 223 immunity does not apply to Harris. The discussions between Hazlett and Harris occurred in response to Hazlett's proposal to settle the dispute between Harris and Gerhardt, not as part of any "complaints, reports or testimony in the course of disciplinary proceedings." The purpose of the discussions was to keep the disciplinary proceeding from going forward. A dispute settlement is separate from the underlying subject matter of the disciplinary proceeding. Thus, those discussions should not be "deemed to be made in the course of judicial proceedings," and judicial immunity does not apply to Harris.

If Rule 223 were applied to grant Harris immunity, the Disciplinary Administrator's efforts to negotiate a binding settlement agreement between a complainant and respondent attorney would become meaningless. An attorney could agree to anything to gain dismissal of a disciplinary complaint, and because of Rule 223 immunity, be freed from performing the agreement.

"Our judicial system cannot survive without the public's trust in the system and the belief that justice will prevail. The public is asked to place its trust in a system dominated by attorneys. To a great extent, that trust is measured by how we, the bench and bar, implement and enforce the disciplinary rules. The purpose of Supreme Court Rule 223 is to encourage the members of the public to file complaints against attorneys who have violated the rules of ethics. It is rationally related to the objective of effectively regulating the conduct of the bar, which in turn protects the public's interest." *Jarvis*, 250 Kan. at 652-53.

Granting Harris immunity in this situation will work against the public policy behind Rule 223 of increasing public confidence in the bench and bar and providing effective regulation of attorney conduct. The public will be discouraged from filing disciplinary

complaints, if filing will grant the attorney immunity from performing any agreed-to resolution of the complaint.

The disciplinary proceeding against Harris arose after Harris refused to abide by the committee's decision. Harris' hearing took place before a panel of the Kansas Board for Discipline of Attorneys on March 13, 1996. The panel found violations of the Model Rules of Professional Conduct (MRPC) 1.15 (1996 Kan. Ct. R. Annot. 302) (removing disputed fee funds from his trustee account for his own use), MRPC 1.4 (1996 Kan. Ct. R. Annot. 270) (failing to properly communicate with client), MRPC 1.16(a)(3) and (d) (1996 Kan. Ct. R. Annot. 310) (delaying notification to the insurance company of his termination, by continuing to work towards a settlement after his client terminated him), and MRPC 1.5(a) (1996 Kan. Ct. R. Annot. 276) (charging an unreasonable fee). We determined those findings were supported by clear and convincing evidence and suspended the imposition of discipline, placing Harris on probation for a period of 2 years on conditions that he pay restitution of $3,094, that he pay Gerhardt's attorney fees in an amount to be determined by this court, and that he not violate the MRPC. See *In re Harris*, 261 Kan. 1063.

Under the facts in this case, Rule 223 should not be used as a shield to protect an attorney in a disciplinary proceeding from civil liability for breach of a settlement agreement negotiated with the assistance of the Disciplinary Administrator's office.

### The Fraud Claim

Gerhardt's amended petition asserted a claim for fraud. Actionable fraud includes an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage. *Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 5, 809 P.2d 1194 (1991). When the alleged fraud relates to promises or statements concerning future events, the gravamen of such a claim is not the breach of the agreement to perform, but the fraudulent misrepresentation concerning a present, existing intention to perform, when no such intention existed. *Modern Air Conditioning,*

*Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 78, 596 P.2d 816 (1979).

A promise to do something in the future, if the promisor had no intention at the time the promise was made to carry it out, is deceit, and if the promisor obtained anything of value by reason thereof, there is actionable fraud. *El Dorado Nat'l. Bank v. Eikmeier*, 133 Kan. 412, 420, 300 Pac. 1085 (1931).

In her response to Harris' motion for summary judgment, Gerhardt stated as to the fraud claim:

"Plaintiff's petition alleges defendant orally represented that he agreed to be bound by the decision of the Johnson County Bar Association Fee Dispute Committee; That defendant's representation was untrue, and, he knew it was untrue at the time he made it; That plaintiff justifiably relied upon defendant's representations; and that Plaintiff has been injured by her reliance upon the representation of defendant. Therefore, Plaintiff's First Amended Petition states a cause of action for fraud.

"Defendant told Mr. Stanton A. Hazlett, that defendant agreed to be boundby the decision of the Johnson County Bar Association Fee Dispute Committee. Mr. Hazlett confirmed his understanding in writing on several occasions with defendant. Plaintiff, in reliance upon the representation by defendant, followed the process set forth in defendant's letter. It was defendant's oral representations to Mr. Hazlett and defendant's written representations that induced plaintiff to submit the controversy to the Johnson County Bar Association Fee Dispute Committee. Thus plaintiff's petition states a cause of action for fraud."

Gerhardt also attached her affidavit and Hazlett's, and included in the record the depositions of Harris and Carrie Huffman. In her affidavit, Gerhardt stated that she had seen a letter from Harris to Huffman in which she believed Harris represented that he agreed to be bound by the decision of the committee. The Hazlett affidavit, previously discussed, had attached to it copies of Hazlett's letters to Harris concerning the agreement and Harris' February 24, 1993, letter to Huffman (set out in this opinion), which was copied to Hazlett.

Hazlett's letter dated March 1, 1993 to Harris described what was to occur after Harris' agreement to the settlement procedure:

"It is my understanding that you will then receive a $4,000.00 check in your name and Ms. Gerhardt's name. That check will be placed in your trust account until there is a resolution by the Johnson County Fee Dispute Committee determining how that money should be divided between you and Ms. Gerhardt. Another check

will be written to Ms. Gerhardt in her name only, distributing to her money from American Family Insurance."

After Huffman received Harris' letter, Gerhardt called and arranged to come to the lobby of American Family on February 26, 1993 to receive payment for her claim. Gerhardt received a separate check from American Family for $11,726.40 and gave a release for $25,000. Gerhardt had also received personal injury protection benefits of $9,274.60, which included payment of medical bills and lost wages. American Family made out a check to both Gerhardt and Harris for $4,000, which Gerhardt endorsed and Huffman sent to Harris. Harris deposited the $4,000 in his trust account. Gerhardt wrote to the committee describing her fee dispute with Harris. Her letter stated that of the $4,000 in Harris' trust account, $3,100 was in dispute. Gerhardt asked for the committee's help in resolving the matter. Harris wrote a check to himself in the amount of $900 from the $4,000 held in his trust account.

Referencing Gerhardt's description of the fee dispute, Harris wrote to the committee:

"The amount of $4,000.00 referred to in her letter was selected as a possible hope for settling this matter by accord and satisfaction. I released my lien against the insurance company so that she could immediately receive the balance of the settlement. At this time I will stand by that settlement by accord and satisfaction if that will finally settle this matter. If Ms. Gerhardt wishes to proceed, I must seek full payment for all services rendered."

In June 1993, the committee found that: (1) no accord and satisfaction had been reached for $4,000; (2) the parties had agreed to deposit that money in Harris' trust account pending the decision of the committee, as set forth in Harris' February 24, 1993, letter; (3) Harris was entitled to $906; and (4) Harris should pay Gerhardt the remaining balance from the trust account of $3,094.

The facts in the pleadings, affidavits, and deposition transcripts included in the record show material issues of fact remain. Did Harris commit fraud against Gerhardt in first promising to be bound by the committee decision before receiving the $4,000 check with Gerhardt's endorsement, and later reneging on that promise? Harris might not have received the $4,000 check and Gerhardt may not have endorsed it had Harris not sent his Feb-

ruary 24, 1993, letter to Huffman. That letter, along with Hazlett's communications with Harris, present an issue of fact as to whether Harris promised to be bound by the committee's decision. Gerhardt may have relied upon Harris' representations by allowing him to keep $4,000 of her claim proceeds in his trust account, pending the decision of the committee. Otherwise, Gerhardt could have insisted on an independent escrow agent to hold the $4,000 until her dispute with Harris was resolved. Although Harris' representations were not made directly to Gerhardt, Harris knew or should have known that Hazlett was negotiating a fee settlement agreement between Gerhardt and Harris and that Hazlett would relay to Gerhardt Harris' representation to be bound by the committee's decision. Harris also knew or should have known that: (1) Gerhardt was dealing directly with American Family and (2) both Gerhardt and American Family were waiting for Harris to indicate his agreement with the settlement procedure before any claim proceeds would be disbursed.

Harris admits that he never intended to be bound by the committee's decision. His May 1, 1993, letter to the committee shows that. The question is whether he made false representations to make Gerhardt believe he was willing to be bound, inducing Gerhardt to endorse the $4,000 check over to him. Harris' May 1, 1993, letter to the committee shows that Harris' position was much different than in his February 24, 1993, letter to Huffman. The May 1, 1993, letter was sent after he had received the $4,000 and paid himself $900 from that amount, but before the June 17, 1993, hearing before the committee.

After the committee rendered its decision, Harris took no further action, kept the $4,000, and waited for Gerhardt to sue him. His failure to seek review of the committee's decision implies that his agreement to submit the fee dispute to the committee for resolution may have been a sham.

The Court of Appeals affirmed summary judgment against Gerhardt on the fraud claim, primarily because of its determination that Hazlett's testimony was inadmissible. The Court of Appeals considered the fraud claim defective, even with that testimony, because (1) Gerhardt failed to show that Harris' statements were

made recklessly or with intent to deceive, and (2) Gerhardt failed to allege any circumstances supporting an inference of wrongful intent at the time the representation was made.

Hazlett's testimony is admissible, as previously discussed. Even without Hazlett's testimony, Harris' February 24, 1993, letter to American Family (before his receipt of $4,000) raises a question whether he represented that he would abide by the committee's decision. Harris' May 1, 1993, letter to the committee (after receipt of the money), coupled with the earlier letter, raises an inference of Harris' fraudulent intent at the time of his representation sufficient to overcome summary judgment.

Harris asserts that Gerhardt's fraud claim is fatally defective because she did not allege she was induced to submit her dispute to the committee. However, if Harris represented that he would be bound by the decision of the committee, the representation would induce Gerhardt to endorse the check to Harris and submit the dispute to the committee. Without Harris' representation, the entire procedure may have been a waste of time and Gerhardt may not have agreed to allow Harris to hold the money in his trust account. Gerhardt stated in her affidavit:

"Mr. Harris's letter [of February 24, 1993 to American Family] and what Mr. Hazlett told me that Mr. Harris said induced me to believe that Mr. Harris would submit the dispute to the Fee Dispute Committee and that Mr. Harris would abide by decision of the Fee Dispute Committee."

Harris questions Hazlett's affidavit because of a perceived inconsistency between the affidavit and Hazlett's letter to Gerhardt dated July 22, 1993, stating:

"I believe Mr. Harris' actions [in refusing to abide by the committee's decision] are contrary to the agreement I had with him on how to resolve this case. However, I had no written agreement with Mr. Harris about the resolution of this case and cannot say with a certainty that he did not misunderstand our agreement."

The affidavit asserts that Harris told Hazlett he would agree to follow the committee's decision. Hazlett's letter does not contradict his affidavit. The letter says that Hazlett did not have a written agreement with Harris to be bound by the committee's decision.

Harris points out that there was no direct contact between himself and Gerhardt concerning the alleged agreement. So long as Harris knew that Gerhardt would rely on representations Harris made to Hazlett or to American Family, the lack of direct contact does not matter.

## Negligent Misrepresentation

We affirm the district court and the Court of Appeals in rejecting Gerhardt's negligent misrepresentation claim. Gerhardt alleged: "Harris's representation [that he would abide by the committee's decision] was intentionally made for the purpose of providing information to a limited group of people, of which Gerhardt was a member, in a particular business transaction."

In *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 605, 876 P.2d 609 (1994), we adopted the tort of negligent misrepresentation, as defined in Restatement (Second) of Torts § 552 (1976). The comments to § 552 show that negligent misrepresentation applies to suppliers of commercial information in favor of users of such information in their commercial transactions. Restatement (Second) of Torts § 552, comment a. The comments include such examples as negligent audits furnished to relying parties in a financial transaction, negligent engineer reports relied on by contractors bidding for construction work, and negligent land surveys relied on by parties to real estate contracts. Restatement (Second) of Torts § 552, comments e and h.

*Mahler* noted the major difference between the torts of negligent misrepresentation and fraudulent misrepresentation: " '[W]hile the latter requires proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false, the former merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information.' " 255 Kan. at 604 (quoting *Huttegger v. Davis*, 599 S.W.2d 506, 514 [Mo. 1980] [Welliver, J., dissenting.]). The tort of negligent misrepresentation would enable Gerhardt to claim liability from Harris without having to establish that Harris knew his representations to Hazlett and Huffman were false at the time they were made.

*Mahler* concerned a claim against a real estate agent in connection with false statements made by the agent to buyers regarding water and sewage problems at the purchased property. On a petition for review we reversed the district court's summary judgment for the agent on the buyers' negligent misrepresentation claim and remanded. We discussed four earlier cases: *Topinka v. American Eagle Fire Ins. Co.*, 167 Kan. 181, 205 P.2d 991 (1949); *Dodd v. Boles*, 137 Kan. 600, 21 P.2d 364 (1933); *Becker v. McKinnie*, 106 Kan. 426, 186 Pac. 496 (1920); and *Bice v. Nelson*, 105 Kan. 23, 180 Pac. 206 (1919). In *Dodd, Becker,* and *Bice,* sellers alleged to have made material misrepresentations inducing buyers to purchase property were held liable, even though they did not know the statements were false.

*Mahler* found Restatement (Second) of Torts § 552 "not inconsistent with our holdings in *Dodd, Bice, Becker* and *Topinka.*" 255 Kan. at 604. We said in *Mahler* that the Court of Appeals "erred in holding that Kansas does not recognize a cause of action for negligent misrepresentation by a real estate agent who induces a buyer to purchase real estate." 255 Kan. at 606.

Here, the Court of Appeals relied on the inadmissibility of Hazlett's testimony to bar the negligent misrepresentation claim. The Court of Appeals also determined that Gerhardt failed to provide evidence of the elements of negligent misrepresentation.

The Harris-Gerhardt relationship does not fit the factual context of *Mahler*'s representations. Harris' representations were made to facilitate settlement of the fee dispute with Gerhardt after his attorney-client relationship with her had ended. However, Restatement of Torts (Second) § 552 does not limit application of negligent misrepresentation to purchase contracts. Generally, § 552 includes negligent supply of commercial information to others for guidance in their business transactions.

Gerhardt contends that Harris continued to owe her a duty of good faith, even after she had discharged him as her attorney, citing *Alexander v. Russo*, 1 Kan.App. 2d 546, 552, 571 P.2d 350, *rev. denied* 222 Kan. 749 (1977) ("[T]he duty [of fidelity and good faith owed by an attorney to his client] does not always cease immediately on the termination of the relation but continues as long as

the influence created by the relationship continues to exist. [Quoting 7 Am. Jur. 2d, Attorneys at Law § 98, p. 110.]"). By the time Gerhardt and Harris negotiated a settlement of the fee dispute through Hazlett's efforts, the animosity between them had reached such a level that they could not communicate directly with each other. It seems doubtful that Harris had any influence over Gerhardt at that point.

Gerhardt also argues that because the attorney-client relationship is one of agency, negligent misrepresentation should apply here. In one sense, Harris may have been acting as Gerhardt's agent. In his February 24, 1993, letter to Huffman, Harris essentially offered to act as Gerhardt's escrow agent in holding the $4,000 until the fee dispute was resolved by the committee.

Harris' position as Gerhardt's escrow agent could impose fiduciary duties as to the $4,000. Those duties could require that Harris tell Gerhardt, before she decided to allow him to escrow the $4,000, that Harris did not intend to be bound by the committee's decision. If Harris had told Gerhardt that, she may have acted differently. However, whether Harris intended to abide by the committee's decision is something known only by Harris. It is not something subject to investigation.

In *Eckholt v. American Business Information, Inc.*, 873 F. Supp. 526, 532 (D. Kan. 1994), the plaintiff employee, following termination, made claims for both fraudulent and negligent misrepresentation against the employer and parent corporation based on representations made in an employment agreement. In the fraud claim, Eckholt alleged that the employer had no intent to employ him under the employment agreement at the time it was entered into. Although the fraud claim survived summary judgment, the court summarily disposed of the negligent misrepresentation claim, saying:

"Eckholt's claim is that defendants were negligent in representing their then-current intent to employ him pursuant to the terms of the employment agreements. The record contains no evidence of negligence, however, and it appears to the Court that defendants either intended to carry out their promises, or they did not. To recognize a claim for negligent promise, on this record, would be to

endow every breach of contract with a potential tort claim for negligent promise. The Seventh Circuit recently noted as much in a similar situation:

> '. . . if one making representations had a present intention not to perform them, the aggrieved party's claim would properly and logically be one for intentional misrepresentation . . . not one based on negligence.'

*Badger Pharmacal, Inc. v. Colgate-Palmolive Co.*, 1 F.3d 621, 628 n.7 (7th Cir. 1993).

"Accordingly, Eckholt's claim for negligent promise must fail. . . ." 873 F. Supp. at 532.

Harris disputes that he made a representation to be bound by the committee, admitting that he never intended to be bound. His intention to carry out a promise is not an issue. Either he made the promise or he did not. We agree with the *Eckholt* rationale and Gerhardt's negligent misrepresentation claim must fail.

The danger in allowing Gerhardt to proceed with her negligent misrepresentation claim is that any breach of contract action could be treated as also including a negligent misrepresentation claim. Endorsing Gerhardt's analysis would encourage an overly expansive reading of § 552.

In *City of Warrensburg, Mo. v. RCA Corp.*, 571 F. Supp. 743 (W.D. Mo. 1983), summary judgment was entered against the city on its negligent misrepresentation claims. The claims arose from the defendant company's alleged broken promises to locate a manufacturing plant in Warrensburg's industrial park, causing an urban development grant to be lost. The court distinguished negligent misrepresentation under § 552 from misrepresentation of intention to perform an agreement under Restatement of Torts (Second) § 530 (1976), quoting the comment to § 530, which stated in part: " 'If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit under the rule stated in § 525 [Liability for Fraudulent Misrepresentation].' " 571 F. Supp. at 753. The *City of Warrensburg* court observed further:

> "Unlike § 530, § 552 does not, by its terms, apply to misrepresentation of intention to perform an agreement. Nor do the illustrations to § 552 apply to other than typical cases of misrepresentation of factual, commercial information. The Comments to § 530 specifically state that where there is no viable action on the contract, the exclusive remedy for misrepresentation of intention to perform an

agreement lies in the action for deceit. . . . A merely negligent misrepresentation of a maker's own intention is not actionable under § 530 for the reason that in the absence of any fraudulent intent . . . there is no misrepresentation of any existing fact on which any action for negligent misrepresentation could be based." 571 F. Supp. at 753.

The *City of Warrensburg* court's reasoning applies to Gerhardt's negligent misrepresentation claim.

## Oral Contract

The district court granted summary judgment against Gerhardt on her oral contract claim after granting Harris' motion in limine to exclude Hazlett's testimony. The court determined that Gerhardt had no evidence of any oral contract without Hazlett's testimony. The district court asked Gerhardt's attorney whether he had any evidence to establish the oral contract, other than Hazlett's testimony. Gerhardt's attorney stated that he did not. Although the February 24, 1993, letter to Huffman of American Family was in the record, Gerhardt's attorney did not mention it.

In affirming the district court, the Court of Appeals held that even Harris' February 24, 1993, letter did not create any material issues of fact, without the testimony of Hazlett, because the letter did not say that Harris agreed to be bound by the committee's decision. The Court of Appeals also suggested that Gerhardt had not framed her claim properly. She did not follow the procedure, mentioned by the district court, of submitting the issue of the reasonableness of Harris' fee for judicial review, as provided by MRPC 1.5(e) (1996 Kan. Ct. R. Annot. 276).

Although Gerhardt could have followed the MRPC 1.5(e) procedure, she was not required to. Gerhardt sought to enforce her alleged contractual agreement with Harris to be bound by the decision of the committee.

## Fraud by Silence and Tortious Interference With Prospective Economic Advantage

Gerhardt characterizes the district court's action as dismissing by summary judgment her claims for fraud by silence and tortious interference with prospective economic advantage. Harris claims

that the district court denied Gerhardt's motion to amend the petition to add her claims for fraud by silence and tortious interference. At the time Harris filed his motion for summary judgment (August 11, 1994), only the fraud, negligent misrepresentation, and breach of oral contract claims were pending. Gerhardt filed a motion to file a second amended petition on September 23, 1994, to add the fraud by silence claim.

On October 13, 1994, Gerhardt filed her pretrial questionnaire and requested leave to amend her petition to add an additional claim of intentional interference with prospective economic advantage. A transcript of the pretrial conference and the pretrial order are not included in the record. The docket sheet contains the following entry for October 13, 1994: "PT held. Ct to rule on S/J w/o oral arguments. Ct hears mot to amend & denies same. PT is to be submitted. (CSR) — Judge JFD."

On October 26, 1994, the district court heard and ruled on Harris' motion for summary judgment, dismissing Gerhardt's fraud and negligent misrepresentation claims. Counsel for Gerhardt asked whether the judge was ruling on both the fraudulent misrepresentation claim and the fraud by silence claim, and the judge stated, "Yes." The judge also addressed and denied the tortious interference claim.

Summary judgment need not have been entered against Gerhardt on the fraud by silence and tortious interference claims because they were not pending at the time of the district court's ruling. The motions to amend were denied on October 13, 1994. The future, if any, of these two motions will be resolved by the district court.

We affirm the Court of Appeals and the district court on summary judgment against Gerhardt on her negligent misrepresentation claim. We reverse the Court of Appeals and the district court on all other issues and remand the case to the district court.