Mohammad Shafayet HOSSAIN,
Plaintiff,

v.

RAUSCHER PIERCE REFSNES, INC.,
d/b/a RPR Clearing Services, and Regional Operations Group, Inc., Defendants.

No. 97–1380–JTM.

United States District Court,
D. Kansas.

May 15, 2000.

Alexander B. Mitchell, II, Klenda, Mitchell, Austerman & Zuercher, L.L.C., Wichita, KS, for Plaintiff.

John W. Shaw, Matthew V. Bartle, Jeffrey A. Ziesman, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Steve, LLP, Kansas City, MO, for Defendants.

## MEMORANDUM AND ORDER

MARTEN, District Judge.

Plaintiff Mohammad Hossain brought this civil action against the defendants, Rauscher Pierce Refsnes, Inc. and Regional Operations Group, Inc., seeking to recover funds the defendants allegedly withdrew from his brokerage account without his permission. Hossain's complaint consisted of two counts, a breach of contract claim and a bailment claim. The defendants moved for summary judgment on each of Hossain's claims. In an order dated April 9, 1999, the court granted the defendants summary judgment on Hossain's bailment claim, but denied summary judgment on his contract claim.

On August 30 and 31, 1999, the court presided over a trial on Hossain's remaining contract claim. After Hossain presented his evidence, the defendants moved for judgment. The court heard arguments from counsel and took the matter under advisement. The court has considered all of the evidence, as well as the parties' briefs and arguments, and has carefully scrutinized the contract at issue. For the reasons set forth below, the defendants' motion for judgment is granted.

### Findings of Fact

Based upon the evidence presented at trial, the court makes the following findings of fact in regard to this case:

1. Hossain began investing money with Asif Ameen on or about November of 1993. Ameen was a stockbroker for Primeline Securities Corporation in Wichita, Kansas.

2. Hossain never completed any account opening paperwork with Ameen or Primeline when he began investing money with Ameen in 1993. And, he did not thereafter receive any account statements or trade confirmations from Ameen or Primeline regarding his investments.

3. Ameen told Hossain that if Hossain invested a certain level of money with Ameen, Hossain would receive a fixed

monthly return of 7%. Hossain, pursuant to Ameen's instructions, made checks payable to Discovery Distributing Corporation and William Control Company and delivered them to Ameen. Ameen told Hossain that the two companies were ad hoc companies of Primeline, but in reality they were bogus businesses Ameen had established. From on or about November 1993 to on or about March 1996, Hossain claims to have invested a total of $141,000.00 with Ameen by making checks payable to William Company, William Control Company or Discovery Distributing Corporation.

4. Hossain began receiving payments represented to be monthly interest or dividends from Ameen on these investments beginning in December of 1993. By December of 1995, Hossain had received approximately $112,000.00 in such payments allocated to his William Company and Discovery Distribution Corporation investments with Ameen.

5. On or about September 7, 1995, the defendants and Primeline entered into a "Fully Disclosed Clearing Agreement" ("the Agreement"), by which the defendants became a clearing broker for Primeline, an introducing broker. The term "fully disclosed" means that the agreement between the introducing broker and the clearing broker is to be disclosed to the customer of the introducing broker.

6. The Agreement expressly allocates the responsibilities between Primeline and the defendants. Pursuant to the terms of the Agreement, the defendants performed ministerial tasks at Primeline's direction, such as executing and clearing trades for Primeline customers, wiring funds from a customer's account and sending Primeline's customers account statements. Clearing Agreement ¶¶ 1.1 – 1.4. These functions are part of what is known in the industry as "carrying an account" for the introducing broker. Pursuant to the Agreement, the defendants also opened an account with a bank in Wichita so that Primeline, as it was required to do under the Agreement, could deposit funds it had received each business day. Id. ¶ 1.1(e).

7. Pursuant to the terms of the Agreement, Primeline was responsible for obtaining and verifying the accuracy of customer information. Id. ¶ 2.1. Primeline was also responsible for the supervision of customer accounts. Id. ¶ 2.4. Furthermore, Primeline was responsible for depositing funds and checks into the defendant's local bank account. Id. ¶ 2.5. Finally, under the Agreement, Primeline undertook the responsibility of validating customer information. Id. ¶ 2.7.

8. Commencing around March of 1996, Hossain, at Ameen's instruction, began delivering to Ameen signed checks made payable to Rauscher Pierce Refsnes; however, the amount and date lines of the checks were not completed. Ameen would then complete the amount and date lines of these checks. From on or about March 1996 to February 1997, $151,000.00 in checks drawn on Hossain's bank account and made payable to Rauscher Pierce Refsnes ("Hossain checks") were completed in this manner.

9. Hossain did not complete any account paperwork necessary to open an account with Primeline that was carried through Rauscher Pierce Refsnes. Nor did he complete a new account form. He also did not complete a W–9 tax form.

10. Hossain did not receive any account statements or trade confirmations from Ameen or anyone else regarding the money represented by the checks made payable to Rauscher Pierce Refsnes. He also did not receive a Rule 382 disclosure, which describes to customers of the introducing firm obligations of the introducing firm and the obligations of the clearing firm.

11. Primeline periodically deposited the Hossain checks, presumably received from Ameen, into the defendants' local bank account. Primeline, without Hossain's knowledge or consent, instructed the defendants that the checks were for the

Nasir Siddiqi and Mohammad Hossaria Primeline account.

12. From on or about April 1996 to April 1997, Primeline instructed Rauscher Pierce Refsnes to wire funds from the Siddiqi–Hossaria account to specifically designated bank accounts. Eventually, the entire balance of the Siddiqi–Hossaria account was wired to a bank account.

13. On or about early June of 1997, Ameen's various Ponzi schemes were discovered. He was subsequently charged with and convicted of several counts of securities fraud and theft in Sedgwick County District Court.

14. The Securities Investor Protection Corporation initiated liquidation proceedings against Primeline in January of 1998.

### Conclusions of Law

■ In his contract claim, plaintiff Hossain claims he is a third party beneficiary of the Agreement between Primeline and the defendants. Before the court can reach the issue of whether Hossain may directly enforce the contract from which he would benefit, Hossain "must show the existence of a provision in the contract that operates to [his] benefit". *United States v. United Services Auto. Ass'n*, 968 F.2d 1000, 1002 (10th Cir.1992) (citing *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 597 P.2d 622, 632 (1979)).

■ Recent cases focusing on third party beneficiary law divide the class of "beneficiaries" into two categories: intended beneficiaries and incidental beneficiaries. *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 389, 736 P.2d 930 (1987). If a party is an intended beneficiary of a contract, he may sue for damages resulting from the breach of a contractual obligation, "even though he was not a party to the contract and had no knowledge of it when made." *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir.1997) (citing *Cornwell v. Jespersen*, 238 Kan. 110, 708 P.2d 515 (1985); *Keith v. Schiefen–Stockham Ins. Agency*, 209 Kan. 537, 498 P.2d 265

(1972)); *see also Fasse*, 241 Kan. at 388–89, 736 P.2d 930 ("Generally, where a person makes a promise to another for the benefit of a third person, that third person may maintain an action to enforce the contract even though he had no knowledge of the contract when it was made and paid no part of the consideration."). "[I]t is not everyone who may benefit from the performance of a contract between two other persons, or who may suffer from its non-performance, who is permitted to enforce the contract by court action." *Cornwell*, 238 Kan. at 115, 708 P.2d 515. "To be a third party beneficiary to a contract, the contract must be made for the third party's benefit as its object, and he must be the party intended to be benefited [sic] in order to be entitled to sue upon it." *Fasse*, 241 Kan. at 389, 736 P.2d 930. The third party need not be identified in the contract or at the time of contracting in order to be an intended beneficiary. *Wolfgang*, 111 F.3d at 1524.

■ "Contracting parties are presumed to act for themselves and therefore an intent to benefit a third person must be clearly expressed in the contract." *Cornwell*, 238 Kan. at 115–16, 708 P.2d 515. The court applies the general rules for constructing contracts in determining the intent of the contracting parties with respect to whether a third party is an intended beneficiary. *Id.* at 116, 708 P.2d 515. The basic rule in interpreting a written contract is the intention of the parties as disclosed by the instrument. *Federal Land Bank v. Krug*, 253 Kan. 307, 312, 856 P.2d 111 (1993). "The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous." *Cornwell*, 238 Kan. at 116, 708 P.2d 515. The contract is considered as a whole, "not simply from the standpoint of one isolated provision." *Fasse*, 241 Kan. at 391, 736 P.2d 930. "Knowledge that a contract will benefit a third party is not necessarily an intent to benefit that third party." *Noller v. GMC Truck & Coach*

*Div.,* 244 Kan. 612, 617, 772 P.2d 271 (1989).

 " 'The right of a third-party beneficiary rests chiefly upon the fact that the contract will create reasonable expectations on his part and will induce him to change his position in reliance.' " *Id.* at 617–18, 772 P.2d 271 (quoting 4 Corbin on Contracts § 775 (1951)). Therefore, in order to recover on a third party beneficiary claim, the third party must demonstrate that he detrimentally relied on the agreement. *Id.*

 The court finds that the plaintiff's claim must be rejected for two reasons. First, Primeline and the defendants may have known that their agreement would benefit third parties—Primeline's customers—but that knowledge is not an intent to benefit the third parties. *See Noller,* 244 Kan. at 617, 772 P.2d 271. Second, the Agreement unambiguously states it is not intended to benefit individuals or entities who are not parties to the Agreement:

> Beneficiaries. The imposition or allocation of any burden or duty on or to one or the other party by this Agreement does not and is not intended to impose or create any burden, right or duty in favor of or for the benefit of any person or entity not a party to this Agreement.

Clearing Agreement ¶ 10.8. Finally, the court finds that the plaintiff did not detrimentally rely on the agreement between Primeline and the defendants, and did not even know the agreement existed at the time he was giving Ameen blank checks made out to Rauscher Pierce Refsnes. Under these circumstances, the court concludes the plaintiff is not entitled to recover on his claim asserting breach of contract.

IT IS THEREFORE BY THE COURT ORDERED this 15th day of May, 2000, that judgment be entered in favor of the defendants Rauscher Pierce Refsnes and Regional Operations Group and against the plaintiff Mohammed Shafayet Hossain.