**INDY LUBE INVESTMENTS, L.L.C., Plaintiff,**

v.

**WAL–MART STORES, INC., et al., Defendants.**

Case No. 01–4020–JPO.

United States District Court, D. Kansas.

April 16, 2002.

Bryan W. Smith, Fisher, Cavanaugh, Smith & Lemon, P.A., Topeka, KS, for Plaintiff.

F. James Robinson, Jr., Hite, Fanning & Honeyman L.L.P., Wichita, KS, William R. Sampson, David A. Rameden, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

O'HARA, United States Magistrate Judge.

### I. Introduction.

This case arises from a failed commercial real estate transaction. It involves common law contract and tort claims.

Pursuant to Fed.R.Civ.P. 12(b)(6), the case is before the court on the motion of defendants DVL, Inc. and Finney Associates, L.P.[1] (collectively, DVL), to dismiss all of the claims asserted against DVL in the first amended complaint of the plaintiff, Indy Lube Investments, L.L.C. (Indy Lube) **(doc. 56)**. Also before the court is the Rule 12(b)(6)-motion of defendant Wal–Mart Stores, Inc. (Wal–Mart), to dismiss Indy Lube's fraud, misrepresentation, and civil conspiracy claims against Wal–Mart **(doc. 59)**. The court has considered defendants' motions, their memoranda in support (docs. 57 & 60), Indy Lube's responses (docs. 73 & 74), and DVL's reply (doc. 78). The time for further briefing has expired. *See* D. Kan. Rule 6.1(e)(1).

As explained below, DVL's motion is denied with respect to Indy Lube's tortious interference with contract and civil conspiracy claims, but is granted with respect to Indy Lube's fraud and third-party beneficiary claims against DVL. Wal–Mart's motion is denied with respect to Indy Lube's civil conspiracy claim; although Wal–Mart's motion is granted with respect to Indy Lube's fraud and negligent misrepresentation claims, the court will grant Indy Lube leave to amend those two claims.

### II. Facts.

According to the well-pleaded allegations in Indy Lube's first amended complaint (doc. 39),[2] the material facts are as

---

**1.** DVL, Inc. is the general partner of Finney Associates, L.P.

**2.** In addition to the allegations in Indy Lube's first amended complaint, the court will consider the documents attached to the first amended complaint, which include the offering portfolio (Ex. A) and the Indy Lube/Wal–Mart contract (Ex. B). Also, the court will consider the undisputedly authentic copy of the Wal–Mart/DVL contract attached to DVL's motion to dismiss because this contract is central to Indy Lube's third-party beneficiary claim. *See, e.g., GFF Corp. v. Associated*

*Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *see also, e.g., Black & Veatch Int'l Co. v. Wartsila NSD N. Am., Inc.,* Case No. 97–2556–GTV, 1998 WL 953966, at *2 (D.Kan. Dec. 17, 1998) (ruling on a motion to dismiss the plaintiff's intended third-party beneficiary claim, and considering the terms of a contract

follows. On October 13, 2000, Wal–Mart presented Indy Lube with a portfolio and information package describing certain real estate located in Garden City, Kansas that was being offered for sale. By way of a written contract dated November 15, 2000, and executed in full on December 12, 2000, Wal–Mart agreed to sell Indy Lube the Garden City real estate for $2.225 million (the Indy Lube/Wal–Mart contract). Also on December 12, 2000, Wal–Mart informed Indy Lube that it only had fee simple ownership to a portion of the real estate, but that it had the contractual right to purchase the remainder pursuant to Wal–Mart's agreement with DVL, the owner of all of the subject real estate. Thus, Indy Lube and Wal–Mart signed an addendum to the Indy Lube/Wal–Mart contract. This addendum provided that Wal–Mart "has the preferential right to purchase the property from [DVL] and acquire fee simple ownership of the [real estate]." Wal–Mart agreed to "exercise ... commercially reasonable efforts" to acquire fee simple ownership of the real estate owned by DVL. The Indy Lube/Wal–Mart contract provided for a closing date on or before January 31, 2001.

Wal–Mart no longer occupied the Garden City real estate, but nevertheless continued to be subject to lease obligations for that portion owned by DVL. State Street Bank and Trust Company (State Street) was the trustee for the owner of a secured note backed by a mortgage and trust indenture on the portion owned by DVL. Wal–Mart made its lease payments directly to State Street, which then applied the payments to the secured note and forwarded to DVL any amounts over and above that required to service the secured note.

On December 11, 2000, Wal–Mart executed a contract to purchase the Garden City property for $2.6 million and forwarded it to DVL. On that same day, DVL sent a letter to State Street requesting the payoff of the note. On December 19, 2000, DVL executed the contract agreeing to sell its interest in the Garden City real estate to Wal–Mart (the Wal–Mart/DVL contract).

At some point between December 19, 2000 and January 31, 2000, DVL allegedly informed Wal–Mart that DVL would not honor the Wal–Mart/DVL contract because the lender would not agree to prepayment of the note. This was untrue.

On January 2, 2001, Brian Curtis of State Street spoke with Peter Gray of DVL concerning the fact that the rent on the real estate had not been paid. They did not discuss any problems with prepayment of the note. On that same day, Curtis also spoke with Jim Cole, an attorney for Wal–Mart. Cole informed Curtis that Wal–Mart was purchasing the real estate and the sale was set to close by January 31, 2001. They did not discuss any problems with prepayment of the note. The next day, on January 3, 2001, Gray called Curtis and informed him that the rent would be paid.

On or about January 9, 2001, Vance Bates, a Wal–Mart employee, participated in a telephone conference with Gray of DVL. During this conference, Gray told Bates that prepayment of the note was not possible, and that the sale would not close. On January 11, 2001, Bates and Gray had another telephone conversation in which they discussed termination of Wal–Mart's lease of the Garden City property.

that the defendant submitted because the contract was "referenced in the pleadings and central to plaintiff's claims"). However, defendants have alluded to facts that are not included in Indy Lube's first amended complaint. Those external factual allegations, which are irrelevant to the court's analysis of a Rule 12(b)(6)-motion to dismiss, therefore will be disregarded.

On January 31, 2001, Wal–Mart's real estate committee met in the so-called Razorback Room at Wal–Mart's headquarters. In discussing the Garden City real estate, the committee determined that it would be cheaper for Wal–Mart to breach the Indy Lube/Wal–Mart contract and, instead, negotiate a lease buyout with DVL.

By February 7, 2001, Curtis had not received word from DVL regarding the closing on the Garden City real estate. Accordingly, Curtis left a voice mail message with Gray requesting an update. Curtis also requested a closing date so that he could determine the exact payoff amount on the secured note.

Jim Tipps, a real estate broker at CB Richard Ellis, the broker for the Garden City real estate, informed Jim Caplinger, an officer with Indy Lube, that there was a problem with the mortgage relating to it being a commercial mortgage backed security. On February 9, 2001, Caplinger sent Tipps a letter offering to provide any assistance the former could with this issue.

On February 12, 2001, less than two weeks after the above-described meeting in the Razorback Room, Wal–Mart sent Indy Lube a letter terminating the Indy Lube/Wal–Mart contract. After receiving this letter, Indy Lube called Wal–Mart to find out why Wal–Mart could not acquire fee simple interest. A Wal–Mart representative told Indy Lube that Wal–Mart could not acquire fee simple interest; however, the fee simple owner (DVL), who Wal–Mart owed $2.6 million, was willing to take Wal–Mart's interest in the property in exchange for releasing the $2.6 million debt. Therefore, the Wal–Mart representative said that it would be easier for Wal–Mart to dispose of the real estate by taking the fee simple owner's offer.

On February 16, 2001, Curtis (of State Street) called Cole (attorney for Wal–Mart). Cole told Curtis that DVL would not sell the Garden City real estate to Wal–Mart and, therefore, the sale would not take place. Some time thereafter, Curtis participated in a conference call between Bates (of Wal–Mart) and Gray (of DVL), during which Bates and Gray told Curtis that the sale of the Garden City real estate would not take place. There was no discussion regarding any problems with prepayment of the note.

Indy Lube believes that the Wal–Mart employees who were involved in the transaction knew, or should have known by commercially reasonable efforts, that there was no problem with prepayment of the note. Based on these facts, Indy Lube's first amended complaint asserts the following claims: breach of contract against Wal–Mart (Count I); negligent misrepresentation against Wal–Mart (Count II); civil conspiracy against both DVL and Wal–Mart (Count III); interference with contract against DVL (Count IV); breach of contract, as third-party beneficiary, against DVL (Count V); and fraud against both DVL and Wal–Mart (Count VI).

Wal–Mart has moved to dismiss Indy Lube's negligent misrepresentation, civil conspiracy, and fraud claims (Counts II, III, and VI). DVL has moved to dismiss Indy Lube's civil conspiracy, interference with contract, third-party beneficiary, and fraud claims (Counts III, IV, V, and VI). Thus, the only claim not challenged by the instant motions is Indy Lube's breach of contract claim against Wal–Mart, as set forth in Count I of the first amended complaint.

### III. Analysis.

A court may dismiss a claim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Dismissal should not be granted unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him to relief," *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130

F.3d 1381, 1384 (10th Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or unless an issue of law is dispositive, *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). The Tenth Circuit has observed that the federal rules " 'erect a powerful presumption against rejecting pleadings for failure to state a claim.' " *Maez v. Mountain States Tel. & Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir.1995) (quoting *Morgan v. City of Rawlins,* 792 F.2d 975, 978 (10th Cir.1986)).

"All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984) (citation omitted). The court must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed. *Id.* The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## A. *Indy Lube's Fraud Claims Against Wal–Mart and DVL.*

To state a claim for fraud, a plaintiff must plead five essential elements: " '(1) an untrue statement of fact, (2) known to be untrue by the party making it, (3) made with the intent to deceive or recklessly

made with disregard for the truth, where (4) another party justifiably relies on the statement, and (5) acts to his or her injury and damage.' " *Heslop v. UCB, Inc.,* 175 F.Supp.2d 1310, 1315 (D.Kan.2001) (quoting *Paper Workers Int'l Union, Local 5–508 v. Slurry Explosive Corp.,* 107 F.Supp.2d 1311, 1329 (D.Kan.2000) (citing *Gerhardt v. Harris,* 261 Kan. 1007, 1013, 934 P.2d 976, 981 (1997))).

Count VI of Indy Lube's first amended complaint alleges fraud against Wal–Mart and DVL.[3] Indy Lube's fraud claim is based on two alleged misrepresentations: (1) that Wal–Mart had the contractual right to purchase the balance of the Garden City real estate; and (2) that there was a problem regarding prepayment of the note.

### 1. *Wal–Mart's Contractual Right to Purchase the Real Estate.*

With respect to the first alleged misrepresentation, which applies only with respect to Indy Lube's fraud claim against Wal–Mart, Indy Lube has stated the first element of a fraud claim—an untrue statement of material fact. Specifically, Indy Lube alleges that Wal–Mart represented to Indy Lube that Wal–Mart had the contractual right to purchase the remainder of the Garden City real estate pursuant to its lease with DVL, when in fact the lease provided Wal–Mart only a mere right of first refusal if DVL received a bona fide offer to purchase from a third party.

Indy Lube also has stated the second element—that the statement in question was known to be untrue by the party making it. Specifically, Indy Lube has alleged that Wal–Mart "*knew* or should have known this information was false"

---

**3.** Wal–Mart has briefed the issue of fraud with respect to the allegations in Counts II, III, and VI of Indy Lube's first amended complaint. However, it is clear that Indy Lube only claims fraud by virtue of the allegations in Count VI and, therefore, the court will disregard Wal–Mart's arguments that do not pertain to the allegations in Count VI.

(emphasis added). Indy Lube also has stated the fifth element—that it acted to its own injury in reliance on this statement—because Indy Lube alleges that it entered into the Indy Lube/Wal–Mart contract under the belief that Wal–Mart had the contractual right to purchase the real estate, and that it suffered damages because of Wal–Mart's alleged misrepresentation.

Indy Lube also has sufficiently pleaded the fourth element of fraud—justifiable reliance. Indy Lube has alleged that it relied on Wal–Mart's alleged misrepresentation. Further, Indy Lube has alleged sufficient facts from which it may be inferred that its reliance was justified. Specifically, Indy Lube alleges that it never received a copy of Wal–Mart's lease with DVL containing the preferential rights provision. Further, there is no apparent reason why Indy Lube would not have been entitled to rely on Wal–Mart's representations, as Wal–Mart presumably would have possessed superior knowledge regarding the terms of its lease with DVL. Thus, at this point, whether Indy Lube justifiably relied on Wal–Mart's representation is a question that should be answered based on the facts, not the pleadings. *See, e.g., Kelley Metal Trading Co. v. Al–Jon/United, Inc.,* 812 F.Supp. 185, 188 (D.Kan.1993) ("Whether the plaintiff should have relied upon the representations made by the defendant cannot be decided on a motion to dismiss.").

Thus, with regard to Indy Lube's fraud claim against Wal–Mart, the court turns its attention to the third element of fraud—that is, whether Wal–Mart made the alleged misrepresentation with the intent to deceive or made it recklessly with disregard for the truth. Wal–Mart argues that Indy Lube must allege facts that tend to indicate Wal–Mart's fraudulent intent. In support of Wal–Mart's argument, Wal–Mart cites securities fraud cases involving an entirely different pleading regime than a common law fraud claim.

■ Under Fed.R.Civ.P. 9(b), the "intent" element of fraud may be "averred generally." *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1252 (10th Cir. 1997) ("Rule 9(b) ... does not require any particularity in connection with an averment of intent, knowledge or condition of mind."). Yet, Indy Lube has conspicuously failed to make even a general allegation of Wal–Mart's fraudulent intent. The court is unwilling to infer the required fraudulent intent based on the facts pleaded in this case. To the extent that Indy Lube argues the court should infer that Wal–Mart had the requisite fraudulent intent based on the fact that Wal–Mart fabricated a problem with prepayment of the note, so that it could benefit financially by negotiating a lease buyout rather than consummating its sale of the property to Indy Lube, the court is unpersuaded.

Notably, Wal–Mart's alleged fabrication that there was a problem with prepayment of the note occurred long *after* Wal–Mart allegedly misrepresented to Indy Lube the nature of Wal–Mart's contractual right to purchase the property. Simply stated, Indy Lube must allege that Wal–Mart had the requisite fraudulent intent at the time that Wal–Mart made this alleged misrepresentation. Indy Lube has failed to do so.

■ Furthermore, even though as noted above the intent element of a fraud claim may be pleaded generally, Wal–Mart correctly points out that Indy Lube has failed to plead the other elements of fraud with the requisite particularity under Fed. R.Civ.P. 9(b). The well-established standard in this jurisdiction for pleading a fraud claim is as follows:

Rule 9(b) states: "In all averments of fraud ..., the circumstances constitut-

ing fraud ... shall be stated with particularity." This heightened pleading requirement serves to provide defendants with adequate notice of the plaintiff's claim, to protect defendants from reputational damage caused by "improvident charges of wrongdoing," and to "inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992) (quotation omitted). This does not mean that Rule 8's principle of "simple, concise and direct" pleadings is to be ignored. *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997). But it does mean that to survive a motion to dismiss, an allegation of fraud must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Id.* (citing *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)). Put another way, *the plaintiff must set out the "who, what, where, and when" of the alleged fraud. See Phillips USA, Inc. v. Allflex USA, Inc.*, 1993 WL 191615 (D.Kan. May 21, 1993); *Nal II, Ltd. v. Tonkin*, 705 F.Supp. 522, 525–26 (D.Kan.1989).

*Kindergartners Count, Inc. v. Demoulin*, 171 F.Supp.2d 1183, 1194 (D.Kan.2001) (emphasis added).

Indy Lube's first amended complaint answers the question of "what" Wal–Mart misrepresented (the nature of Wal–Mart's contractual right to purchase the real estate), and "when" Wal–Mart made this misrepresentation (December 12, 2000). However, the first amended complaint does not identify the particular individual(s) from Wal–Mart "who" made the misrepresentation. Nor does it describe "where" the representation allegedly took place. If Indy Lube's fraud claim is based on the verbiage in the addendum to the Indy Lube/Wal–Mart contract that Wal–Mart "has the preferential right to pur-

chase the property from [DVL] and acquire fee simply ownership of the [real estate]," then Indy Lube must identify this as the location "where" the misrepresentation occurred. Indy Lube must also identify the Wal–Mart representative "who" made this misrepresentation. If Indy Lube's fraud claim is based on another written or verbal communication by a Wal–Mart representative, then Indy Lube must allege the location "where" the misrepresentation occurred and identify the Wal–Mart representative "who" made the misrepresentation.

In sum, the court finds Indy Lube's fraud claim against Wal–Mart inadequate insofar as it: (1) fails to allege that Wal–Mart made the alleged misrepresentation with the intent to deceive or recklessly made with disregard for the truth; (2) fails to specify the particular individual(s) from Wal–Mart who made the misrepresentation; and (3) fails to describe where the representation allegedly took place. However, the court realizes that it may be possible for Indy Lube to cure these pleading deficiencies in its fraud claim against Wal–Mart. Therefore, the court exercises the discretion provided by Fed.R.Civ.P. 15(a), and grants Indy Lube leave to amend its fraud claim against Wal–Mart (Count VI) on or before May 3, 2002, to conform to these pleading requirements.

### 2. Prepayment of the Note.

■ The court will now turn its attention to the second alleged misrepresentation-that is, Indy Lube's allegation that Wal–Mart and DVL fabricated a problem regarding prepayment of the note. The circumstances constituting the precise "untrue statement of material fact" are blurry here. It appears that this alleged misrepresentation is based on the fact that DVL told Wal–Mart that DVL was unable to prepay the note, *or* that Wal–Mart told

Indy Lube that DVL told Wal–Mart that DVL was unable to prepay the note. Regardless of the nature of the precise alleged misrepresentation, Indy Lube cannot base its fraud claim against Wal–Mart or DVL on this alleged misrepresentation, because Indy Lube has failed to allege any facts from which the court can infer that Indy Lube acted in reliance on this misrepresentation. The above-described chronology of events totally refutes any reasonable inference that Indy Lube acted in reliance on this alleged misrepresentation. The Indy Lube/Wal–Mart contract was finalized on December 12, 2000, *before* Wal–Mart made this alleged misrepresentation some time between December 19, 2000 and January 31, 2001. There is no allegation that Indy Lube took any action whatsoever in reliance on this alleged misrepresentation. Thus, Indy Lube has failed to state an actionable claim for fraud based on this alleged misrepresentation. *See, e.g., Hall v. Doering,* 997 F.Supp. 1464, 1473 (D.Kan.1998) (dismissing a fraud claim where the plaintiffs failed to allege facts demonstrating reliance on the untrue statement); *Todd v. Wichita Fed. Sav. & Loan Ass'n,* 184 Kan. 492, 495, 337 P.2d 648, 650 (1959) (holding the plaintiffs could not state a claim for fraud because the plaintiffs acted *before* the defendants made the untrue statements).

Accordingly, DVL's motion to dismiss Indy Lube's fraud claim is granted. Further, Wal–Mart's motion to dismiss Indy Lube's fraud claim is granted insofar as Indy Lube seeks to base its fraud claim on any alleged misrepresentation regarding prepayment of the note. If and when Indy Lube files its second amended complaint, Indy Lube shall omit any allegation of fraud against DVL, and Indy Lube shall clarify that its claim of fraud against Wal–Mart is based on Wal–Mart's alleged misrepresentation regarding the nature of Wal–Mart's contractual right to purchase the real estate.

### B. *Indy Lube's Negligent Misrepresentation Claim Against Wal–Mart.*

Count II of Indy Lube's first amended complaint alleges negligent misrepresentation against Wal–Mart. "The elements of negligent misrepresentation are similar to those of a claim for fraud, except that a negligent misrepresentation claim does not require proof that the defendant knew the statement was untrue or was reckless as to whether the statement was true or false." *Sheldon v. Vermonty,* 31 F.Supp.2d 1287, 1295 n. 8 (D.Kan.1998) (citing *Mahler v. Keenan Real Estate, Inc.,* 255 Kan. 593, 604, 876 P.2d 609, 616 (1994)); *see also Kreekside Partners v. Nord Bitumi U.S., Inc.,* 963 F.Supp. 959, 966 (D.Kan.1997) ("[T]he elements of negligent misrepresentation differ from those of fraud only with respect to the standard by which the defendant is charged with knowledge of the representation's falsity."). Instead, a negligent misrepresentation claim " 'merely requires proof that the defendant failed to exercise reasonable care or competence to obtain or communicate true information.' " *Gerhardt v. Harris,* 261 Kan. 1007, 1018, 934 P.2d 976, 984 (1997) (quoting *Mahler,* 255 Kan. at 604, 876 P.2d at 616).

Indy Lube points to four alleged misrepresentations made by Wal–Mart: (1) it had the contractual right to purchase the Garden City real estate from DVL; (2) it would use commercially reasonable efforts to obtain fee simple interest in the real estate; (3) the status of its efforts to obtain fee simple interest in the Garden City real estate; and (4) the reason that it was unable to satisfy the contingency in the Indy Lube/Wal–Mart contract. As described below, Indy Lube's negligent misrepresentation cannot rest on the second, third, or fourth of these alleged misrepresentations but, instead, as with Indy Lube's fraud claim, can only plausibly be based on the first.

■ Indy Lube cannot base its negligent misrepresentation claim on the second alleged misrepresentation—that is, that Wal–Mart would use commercially reasonable efforts to obtain fee simple interest in the real estate. This representation was a statement of future intent. A negligent misrepresentation claim may only be based on a "misrepresentation of pre-existing or present fact." *Graphic Techs., Inc. v. Pitney Bowes, Inc.*, 998 F.Supp. 1174, 1179 (D.Kan.1998). It may not be based on an intention to perform an agreement. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 221, 4 P.3d 1149, 1167 (2000). Otherwise, a negligent misrepresentation claim would arise in every breach of contract action. *Eckholt*, 873 F.Supp. 526, 532 (D.Kan.1994) ("To recognize a claim for negligent promise . . . would be to endow every breach of contract with a potential tort claim for negligent promise."). Thus, it is well settled that a negligent misrepresentation claim cannot be based on a future event. *See, e.g., Thomas v. Talbott Recovery Sys., Inc.*, 982 F.Supp. 794, 801 (D.Kan.1997) ("[A] negligent misrepresentation cause of action is not appropriate here because the alleged misrepresentation involved a future event."); *Hippen v. First Nat'l Bank*, Case No. 90–2024–L, 1992 WL 73554, at *5 (D.Kan. Mar. 19, 1992) ("Plaintiffs cannot sustain a claim that defendants 'negligently' entered into a[ ] . . . promise they did not intend to keep.").

■ Furthermore, Indy Lube cannot base its negligent misrepresentation claim on the third and fourth alleged misrepresentations—that is, the status of its efforts to obtain fee simple interest in the Garden City real estate and the reason that it was unable to satisfy the contingency in the Indy Lube/Wal–Mart contract. These alleged misrepresentations do not state a claim for negligent misrepresentation because Indy Lube has failed to allege any facts from which the court can infer that Indy Lube acted in reliance on these misrepresentations. Once again, the chronology of events totally defies the notion that Indy Lube acted in reliance on either of these alleged misrepresentations because Indy Lube entered into the Indy Lube/Wal–Mart contract *before* Wal–Mart made either of these alleged misrepresentations. There is no allegation that Indy Lube took any action whatsoever in reliance on either of these alleged misrepresentations.

■ Thus, as with Indy Lube's fraud claim, Indy Lube's negligent misrepresentation claim can only plausibly rest on the first alleged misrepresentation—that is, the nature of Wal–Mart's contractual right to purchase the Garden City real estate from DVL. However, Indy Lube's negligent misrepresentation claim is deficient in many respects as it is presently pleaded. Although it alleges that Wal–Mart represented to Indy Lube that Wal–Mart had an agreement to purchase the Garden City real estate, it nevertheless fails to allege that this representation was untrue. Further, it does not allege that Wal–Mart failed to exercise reasonable care or competence to obtain or communicate true information to Indy Lube. It also fails to specify the precise manner in which Indy Lube justifiably relied on this representation.

Accordingly, Wal–Mart's motion to dismiss Indy Lube's negligent misrepresentation is granted. However, as with Indy Lube's fraud claim against Wal–Mart, it may be possible for Indy Lube to cure the deficiencies in its negligent misrepresentation claim. Therefore, the court exercises the discretion provided by Fed.R.Civ.P. 15(a), and grants Indy Lube leave to amend its negligent misrepresentation claim against Wal–Mart (Count II) on or before May 3, 2002, to conform to these pleading requirements, but only to the extent that Indy Lube bases this claim on

Wal–Mart's alleged misrepresentation regarding the nature of its contractual right to purchase the Garden City real estate from DVL. Indy Lube would be well advised to reframe this claim to essentially mirror its fraud claim, with one exception. That is, instead of alleging that Wal–Mart acted with fraudulent intent, Indy Lube's negligent misrepresentation claim should only allege that Wal–Mart failed to exercise reasonable care or competence to obtain or communicate true information.

### C. *Indy Lube's Claim for Interference With Contract Against DVL.*

█ To state a claim for tortious interference with contract, a plaintiff must plead five essential elements: "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom." *Carson v. Lynch Multimedia Corp.*, 123 F.Supp.2d 1254, 1261 (D.Kan. 2000) (citing *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 168–69, 872 P.2d 252, 257 (1994)).

█ DVL argues that Indy Lube has attempted to plead a claim for negligent rather than intentional interference with contract, and further argues that Kansas law does not recognize a claim for negligent interference with contract. In this regard, DVL points to language in paragraph 56 of Indy Lube's first amended complaint that alleges DVL *"knew or should have known* of the [Indy Lube/Wal–Mart] contract" (emphasis added). In response, Indy Lube argues this particular allegation is pertinent to the second element of the tortious interference claim—that is, DVL's knowledge of the existence of the Indy Lube/Wal–Mart contract. Indeed, this knowledge element may consist of actual or constructive knowledge. *See Petroleum Energy, Inc. v. Mid–America Petroleum, Inc.*, 775

F.Supp. 1420, 1429 (D.Kan.1991) (reciting the second element of a tortious interference claim as requiring "actual or constructive knowledge"); *V.C. Video, Inc. v. National Video, Inc.*, 755 F.Supp. 962, 970 (D.Kan.1990) (same). Therefore, the court believes that Indy Lube's "knew or should have known" language is appropriate in this respect. Furthermore, paragraph 58 of Indy Lube's first amended complaint makes the necessary allegation of intentional conduct with respect to the third element of Indy Lube's tortious interference claim, by alleging that Indy Lube has suffered damage as a result of Finney Associates' "tortious and/or *intentional* interference" (emphasis added).

DVL also argues that Indy Lube has failed to plead a required element of intentional interference: malice. Indy Lube acknowledges that it must prove malice in order to succeed on this claim. The court agrees. *See L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1288 (10th Cir.2000) (affirming the district court's award of summary judgment because the plaintiff failed to point to specific facts showing malicious conduct; "[M]alice is a predicate for tortious interference ...." (citing *Dickens*, 255 Kan. at 169, 872 P.2d at 257; and *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106, 1115 (1986))).

However, Indy Lube argues that it need not explicitly plead the word "malice" in order to state a claim. The court has located one case that specifically addresses this issue. In *OMB Police Supply, Inc. v. Elbeco, Inc.*, Case No. 00–2518–KHV, 2001 WL 681575 (D.Kan. May 11, 2001), the Hon. Kathryn H. Vratil, United States District Judge, addressed the defendants' argument that plaintiff had failed to make the necessary allegation of malice in a intentional interference claim, and concluded:

To satisfy the notice pleading requirements, plaintiff does not have to specifically include the word "malice" in the complaint. Rule 8(a), Fed.R.Civ.P., does not require plaintiff to allege detailed facts that establish its right to judgment. Rather, plaintiff must set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.

*Id.* at \*4.

■ In this case, as in *OMB*, the court believes that Indy Lube has alleged sufficient facts to allege malice by implication. It can reasonably be inferred from the allegations in Indy Lube's complaint that DVL stood to gain financially from the failure of the Indy Lube/Wal–Mart contract. In fact, according to plaintiff's allegations, both DVL and Wal–Mart stood to gain by negotiating a lease buyout rather than allowing Wal–Mart to consummate the Indy Lube/Wal–Mart transaction. DVL's statement to Wal–Mart that DVL could not prepay the secured note would have been a bold-faced lie if, in fact, there were no obstacles to prepayment. It can reasonably be inferred that DVL fabricated this prepayment excuse so that Wal–Mart would be seemingly justified in its inability to complete its sale of the property to Indy Lube, thus allowing both DVL and Wal–Mart to benefit financially from the failed Indy Lube/Wal–Mart contract. The court expresses no opinion as to whether these allegations, if proven, are sufficient to establish malice. However, at this particular juncture, the inquiry is not whether the Indy Lube will prevail, but whether it is entitled to offer evidence to support its claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). At this point, the court is persuaded that Indy Lube has made sufficient allegations to withstand a motion to dismiss.

Next, the court will address what it will refer to as DVL's logic argument. DVL argues that, on the one hand, if DVL misled Wal–Mart into believing that DVL could not prepay the note, then Wal–Mart did nothing commercially unreasonable in failing to acquire title to the DVL-owned real estate and, therefore, did not breach the Indy Lube/Wal–Mart contract. On the other hand, if Wal–Mart knew there was no problem with prepayment of the note, then Wal–Mart breached the Indy Lube/Wal–Mart contract of its own accord without needing the assistance of DVL. The court is unpersuaded by the "logic" of this argument for a number of reasons. Its most obvious fallacy is that, even if Wal–Mart was misled by DVL into believing that DVL could not prepay the note, Wal–Mart did not necessarily exercise commercially reasonable efforts by simply accepting this representation without further inquiry. Quite simply, the mere acceptance of a representation is not necessarily synonymous with the exercise of commercially reasonable efforts.

Accordingly, DVL's motion to dismiss Indy Lube's intentional interference with contract claim is denied.

**D.** *Indy Lube's Civil Conspiracy Claims Against DVL and Wal–Mart.*

■ Count III of Indy Lube's first amended complaint alleges civil conspiracy against DVL and Wal–Mart. "To state a claim for civil conspiracy under Kansas law, a plaintiff must allege facts sufficient to establish five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Carson v. Lynch Multimedia Corp.*, 123 F.Supp.2d 1254,

1261 (D.Kan.2000). In addition, the defendants must have committed a wrong that gives rise to a cause of action independent of the conspiracy claim. *Id.* "When all elements are present, any act done by a member of the conspiracy in furtherance of the common object and in accordance with the general plan becomes the act of all, and each conspirator is responsible for the act." *Vetter v. Morgan,* 22 Kan. App.2d 1, 8, 913 P.2d 1200, 1206 (1995).

Indy Lube's civil conspiracy claim centers around its allegation that Wal–Mart and DVL fabricated the problem with prepayment of the note so that Wal–Mart would be unable to purchase the real estate from DVL and, therefore, Wal–Mart would not be obligated to sell the real estate to Indy Lube. DVL argues that Indy Lube's civil conspiracy claim should be dismissed because the court should dismiss the underlying predicate fraud claim upon which the civil conspiracy claim is based.[4] However, DVL misses the mark. Indy Lube's civil conspiracy claim is *not* predicated on its fraud and misrepresentation claims, which as earlier indicated can only plausibly focus on Wal–Mart's alleged misrepresentation regarding the nature of its contractual right to purchase the Garden City real estate from DVL. Instead, Indy Lube's civil conspiracy claim is predicated on Indy Lube's breach of contract and tortious interference claims, both of which are proper underlying claims to support a civil conspiracy claim. *See Pizza Mgmt., Inc. v. Pizza Hut, Inc.,* 737 F.Supp. 1154, 1165 (D.Kan.1990) ("Kansas courts have recognized a conspiracy to procure or induce a breach of contract." (internal quotation omitted)).

DVL also argues that Indy Lube has failed to plead its civil conspiracy claim with adequate particularity. The court

disagrees. Heightened pleading standards might apply if Indy Lube's civil conspiracy claim were predicated on its fraud claim. *See, e.g.,* Fed.R.Civ.P. 9(b) ("[T]he circumstances constituting fraud ... shall be stated with particularity."); *Deere & Co. v. Zahm,* 837 F.Supp. 346, 350 (D.Kan.1993) (requiring "more than conclusory allegations of the existence of a conspiracy" where the civil conspiracy was based on a fraud; citing Fed.R.Civ.P. 9(b)). However, as discussed previously, Indy Lube's civil conspiracy claim is predicated on Indy Lube's breach of contract and tortious interference claims, not its fraud claim. Therefore, Indy Lube must simply make a "short and plain statement ... showing that [it] is entitled to relief," Fed.R.Civ.P. 8(a), under its civil conspiracy theory. Indy Lube's first amended complaint makes the necessary allegations and provides Wal–Mart and DVL with adequate notice of the basis upon which Indy Lube will seek to recover under this theory.

Accordingly, both DVL's and Wal–Mart's motions to dismiss Indy Lube's civil conspiracy claims are denied.

**E.** *Indy Lube's Third–Party Beneficiary Claim Against DVL.*

Count V of Indy Lube's first amended complaint seeks damages from DVL for breach of contract on the theory that Indy Lube was an intended third-party beneficiary of the Wal–Mart/DVL contract. The Tenth Circuit has stated the law in Kansas for determining whether a person may sue based on this theory:

A person may sue for damages resulting from the breach of a contractual obligation, even though he was not a party to the contract and had no knowledge of it when made, if he was an

---

4. Wal–Mart has failed to offer any specific argument that Indy Lube's civil conspiracy

claim against Wal–Mart should be dismissed.

intended beneficiary of that obligation. It is not necessary that the third party be identified in the contract or at the time of contracting in order to be an intended beneficiary. . . .

In determining the intent of the contracting parties with respect to whether a third party is an intended beneficiary, we must apply the general rules for construction of contracts. The intention of the parties and the meaning of the contract are to be determined from the instrument itself where the terms are plain and unambiguous. However, we will consider evidence of the facts and circumstances surrounding its execution when the instrument is ambiguous on its face and requires aid to clarify its intent. A contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient in the sense the contract may be understood to reach two or more possible meanings. *Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997) (extensive quotations and citations to Kansas law omitted).

▉▉▉▉ Contracting parties are presumed to act for their own benefit absent a clear expression in the contract that they intend to benefit a third party. *Fasse v. Lower Heating & Air Conditioning, Inc.,* 241 Kan. 387, 389, 736 P.2d 930, 932 (1987); *Cornwell v. Jespersen,* 238 Kan. 110, 115–16, 708 P.2d 515, 520–21 (1985). The third-party beneficiary does not need to be expressly named in the contract, provided that he is "a member of a designated class or identifiable in some manner as a benefitted person." *Hartford Fire Ins. Co. v. Western Fire Ins. Co.,* 226 Kan. 197, 210, 597 P.2d 622, 632 (1979).

▉▉▉ In this case, Indy Lube argues that it was a member of a designated class intended to benefit from the Wal–Mart/DVL contract. However, Indy Lube has failed to direct the court's attention to, and

the court has been unable to locate any, verbiage in the Wal–Mart/DVL contract that suggests the contract was intended to benefit anyone other than Wal–Mart and DVL. Instead, Indy Lube essentially argues that the purpose of the Wal–Mart/DVL contract was to allow Wal–Mart to acquire the real estate so that it could resell it to Indy Lube. While this may be true, under general rules of contract construction, the court cannot consider such extrinsic evidence unless the contract is "ambiguous . . . and requires aid to clarify its intent." *Wolfgang,* 111 F.3d at 1524 (considering extrinsic evidence only after determining the contract was ambiguous); *see also Laird Noller v. GMC Truck & Coach Div., GMC,* 244 Kan. 612, 617, 772 P.2d 271, 275 (1989) (reversing the Court of Appeals' decision, which relied on extrinsic evidence of the parties intent, because the contract contained "no expression of an intent to benefit a third party"). In this case, the Wal–Mart/DVL contract is not ambiguous. Therefore, the court may not consider any extrinsic evidence in determining whether Indy Lube can sue as an intended third party beneficiary.

Wal–Mart and DVL may have known that Indy Lube stood to realize a benefit if the Wal–Mart/DVL sale had been consummated. However, that does not mean that Indy Lube may properly be regarded as an intended beneficiary of the Wal–Mart/DVL contract. *See, e.g., Laird Noller,* 244 Kan. at 617, 772 P.2d at 275 ("Knowledge that a contract will benefit a third party is not *intent* to benefit the third party." (emphasis in original)).

Further, DVL's argument that Indy Lube has failed to allege any facts indicating that Indy Lube detrimentally relied on DVL's performance under the Wal–Mart/DVL contract is well taken. "The right of a third-party beneficiary rests chiefly upon the fact that the contract will create rea-

**1128**

sonable expectations on his part and will induce him to change his position in reliance." *Laird Noller,* 244 Kan. at 617–18, 772 P.2d at 275 (quotation omitted) (noting the plaintiff failed to demonstrate detrimental reliance); *accord Hossain v. Rauscher Pierce Refsnes, Inc.,* 97 F.Supp.2d 1237, 1241 (D.Kan.2000). In this case, as explained above, the chronology of events is completely inconsistent with any notion that Indy Lube relied to its detriment on the Wal–Mart/DVL contract. Indy Lube entered into the Indy Lube/Wal–Mart contract on December 12, 2000, *before* the Wal–Mart/DVL contract was entered into on December 19, 2000. Thus, Indy Lube has failed to allege that it changed its position in reliance on the Wal–Mart/DVL contract.

Accordingly, DVL's motion to dismiss Indy Lube's third-party beneficiary claim is granted.

### IV.  Order.

In consideration of the foregoing,

IT IS HEREBY ORDERED:

1.  DVL's motion to dismiss **(doc. 56)** is granted in part and denied in part. Specifically, the motion is denied with respect to Indy Lube's civil conspiracy and tortious interference with contract claims against DVL (Counts III & IV). However, the motion is granted with respect to Indy Lube's third-party beneficiary and fraud claims against DVL (Counts V & VI), and accordingly those two claims are hereby dismissed, with prejudice. Thus, this case may proceed on Indy Lube's claims against DVL in Counts III and IV as set forth in the first amended complaint.

2.  Wal–Mart's motion to dismiss **(doc. 59)** is granted in part and denied in part. Specifically, the motion is denied with respect to Indy Lube's civil conspiracy claim against Wal–Mart (Count III). The motion is granted with respect to Indy Lube's negligent misrepresentation and fraud claims against Wal–Mart (Counts II & VI);

Indy Lube is granted leave, if it wishes to do so, to file and serve a second amended complaint, no later than **May 3, 2002,** that adequately pleads negligent misrepresentation and fraud against Wal–Mart based on Wal–Mart's alleged misrepresentation regarding the nature of Wal–Mart's contractual right to purchase the Garden City real estate. In any event, at a minimum, even if Indy Lube does not amend its negligent misrepresentation claim in Count II, and/or its fraud claim in Count VI, this case may proceed on Indy Lube's claims against Wal–Mart in Count I (breach of contract) and Count III (civil conspiracy) as set forth in the first amended complaint.

3.  The clerk shall mail copies of this memorandum and order to all counsel of record.